**FILED**
**April 5, 2023**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**CARL L. BLAZER,**
**Claimant Below, Petitioner**

**vs.)    No. 20-0800** (BOR Appeal No. 2055141)
(Claim No. 2019010211)

**THE HOMER LAUGHLIN CHINA COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Carl L. Blazer, by counsel Patrick K. Maroney, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). The Homer Laughlin China Company, by counsel Lucinda Fluharty, filed a timely response.

The issues on appeal are compensability, medical treatment, and temporary total disability benefits. Mr. Blazer protested three decisions by the claims administrator in this claim. In the first Order, dated February 21, 2019, the claims administrator denied a request for a right wrist radioscapholunate fusion/Darrach procedure, distal scaphoid excision, and an excision carpi ulnaris tendon transfer. The claims administrator issued its second Order on February 25, 2019, denying the addition of aggravation of preexisting right wrist osteoarthritis to the claim. Finally, on March 18, 2019, the claims administrator denied a request for temporary total disability benefits for the period of February 17, 2019, through March 3, 2019. On February 10, 2020, the Workers' Compensation Office of Judges ("Office of Judges") affirmed all three claims administrator decisions. This appeal arises from the Board of Review's Order dated September 18, 2020, in which the Board affirmed the Final Decision of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

The standard of review applicable to this Court's consideration of workers' compensation appeals has been set out under W. Va. Code § 23-5-15, in relevant part, as follows:

(c) In reviewing a decision of the Board of Review, the Supreme Court of Appeals shall consider the record provided by the board and give deference to the board's findings, reasoning, and conclusions . . . .

(d) If the decision of the board represents an affirmation of a prior ruling by both the commission and the Office of Judges that was entered on the same issue in the same claim, the decision of the board may be reversed or modified by the Supreme Court of Appeals only if the decision is in clear violation of constitutional or statutory provision, is clearly the result of erroneous conclusions of law, or is based upon the board's material misstatement or mischaracterization of particular components of the evidentiary record. The court may not conduct a de novo reweighing of the evidentiary record . . . .

*See Hammons v. W. Va. Off. of Ins. Comm'r,* 235 W. Va. 577, 582-83, 775 S.E.2d 458, 463-64 (2015). As we previously recognized in *Justice v. West Virginia Office Insurance Commission*, 230 W. Va. 80, 83, 736 S.E.2d 80, 83 (2012), we apply a de novo standard of review to questions of law arising in the context of decisions issued by the Board. *See also Davies v. W. Va. Off. of Ins. Comm'r*, 227 W. Va. 330, 334, 708 S.E.2d 524, 528 (2011).

Mr. Blazer, a die maker, was pulling a die out of a kiln on October 15, 2018, when it became stuck. While trying to lift it, he felt something pull in his right wrist, and his wrist began to swell. A Report of Injury was signed on October 30, 2018, indicating that he hurt his right wrist at work. The physician's portion cited an occupational right wrist strain with a disability period of less than four days.

A November 28, 2018, MRI Report from East Liverpool City Hospital indicated that Mr. Blazer had findings that suggested a full-thickness tear of the triangular fibrocartilage complex ("TFCC").[1] Degenerative changes were greater at the radiocarpal joint with chronic deformity of the distal ulna with bone marrow edema and subchondral cystic changes within the lunate. There was negative ulnar variance and advanced tenosynovitis of the flexor tendons proximal to the carpal tunnel, with fluid collection measuring 4.4 cm. The MRI also revealed extensor carpi ulnaris tendinopathy with mild tenosynovitis, along with intact intrinsic ligaments of the wrist. On December 5, 2018, the claims administrator held the claim compensable for right wrist sprain.

Office notes from Thomas B. Hughes Jr., M.D., an orthopedic specialist, indicated that Mr. Blazer was evaluated for his right wrist injury on December 14, 2018. Physical examination revealed foveal tenderness with mild foveal swelling. There was no erythema, ecchymosis, or breaks in the skin. Dr. Hughes reviewed the prior MRI images and noted mild radiocarpal tenderness. Dr. Hughes found no acute fracture or dislocation but did see some signal change around the TFCC. He injected Mr. Blazer's right wrist with pain medication, and the diagnosis was listed as degenerative TFCC tears of the right wrist.

---

[1] The triangular fibrocartilage complex is an important structure in the wrist made of tough fibrous tissue and cartilage. This tissue supports the joints between the end of the forearm bones, adding to their stability.

By Order of the claims administrator dated December 18, 2018, the additional condition of right wrist TFCC tear was added to the claim. The claims administrator also approved a request by Dr. Hughes for reimbursement of the injection into Mr. Blazer's right wrist. Temporary total disability benefits were granted from January 14, 2019, to February 11, 2019.

An office note by Dr. Hughes dated February 11, 2019, indicated that Mr. Blazer returned to his office with right wrist pain. The injection did help with the pain for about a week and then the pain returned. Three views of the right wrist were obtained and evaluated, which showed a full thickness tear of the TFCC, degenerative changes at the radiocarpal joint with chronic deformity of the distal ulna with bone marrow edema, subchondral cystic changes with a lunate, and advanced tenosynovitis of the flexor tendon proximal to the carpal tunnel fluid collection measuring 4.4 cm. The assessment was right wrist arthritis and a TFCC tear. After evaluation, Dr. Hughes submitted a Diagnosis Update form dated February 11, 2019, listing aggravated preexisting arthrosis of the right wrist. Dr. Hughes also provided a Status Update indicating surgery was scheduled on March 12, 2019. On February 21, 2019, Dr. Hughes submitted another Diagnosis Update noting that the procedures necessary to treat Mr. Blazer's right wrist were wrist radioscapholunate fusion/Darrach procedure/distal excision and extensor carpi ulnar tendon transfer.

On February 21, 2019, the claims administrator denied authorization for the right wrist radioscapholunate fusion/Darrach procedure, distal scaphoid excision, and excision carpi ulnaris tendon transfer finding that the treatment was directed toward a condition not recognized in the claim. The claims administrator issued another Order on February 25, 2019, denying the request from Dr. Hughes to add aggravation of preexisting right wrist osteoarthritis as a condition in the claim. Mr. Blazer protested the claims administrator's Orders.

An office note from Dr. Hughes dated March 4, 2019, indicated that Mr. Blazer had a degenerative TFCC tear, as well as advanced arthritic changes in his right wrist. Dr. Hughes stated that he was functioning at a high level prior to his work-related injury, and the injury affected his wrist significantly to the point where he could no longer work without pain. Mr. Blazer was diagnosed with arthritis of the right wrist and a TFCC right wrist injury. Dr. Hughes opined that the underlying arthritis is secondary to the thirty-three years performing his job and that his condition is definitely related to his work, which involves heavy grasping, lifting, and rotating.

On March 18, 2019, Mr. Blazer was granted temporary total disability benefits from February 12, 2019, to February 16, 2019. However, the claims administrator denied the request for temporary total disability benefits for the period of February 17, 2019, to March 3, 2019. This denial was based upon the fact that the temporary total disability benefits were requested for a period of disability for a non-authorized medical procedure, which is a right wrist fusion. Mr. Blazer protested the claims administrator's Order.

Mr. Blazer testified at a deposition on August 7, 2019, that he worked for Homer Laughlin China Company for over forty years. On the day of his injury, he was lifting a ring-full of a ceramic tile off an impression and the pin stuck. He felt a pull and a tear in his right wrist. The claim was

eventually updated to include a TFCC tear of the right wrist. Mr. Blazer testified that his surgery was denied, and he could not receive the last week of benefits. He also stated that he cannot return to work until he is cleared by the company's doctor. All in all, Mr. Blazer testified that he went nearly two weeks without pay. He was cleared to return to work around March 4, 2019. Although he was able to return to work, he still experiences wrist pain.

Chuangfang Jin, M.D., performed an Independent Medical Evaluation on October 14, 2019, and opined that Mr. Blazer was suffering from advanced degenerative arthritis of the right wrist. Dr. Jin also noted that the MRI demonstrated a TFCC tear. Dr. Jin found Mr. Blazer to be at maximum medical improvement for his wrist sprain and further found that the TFCC is likely only an incidental finding and not responsible for his current symptoms. She explained that the current limitations with reduced range of motion of the right wrist is not due to the sprain or the TFCC tear, but rather to Mr. Blazer's degenerative arthrosis. Not only did Dr. Jin agree with the denial of adding aggravation of pre-existing right wrist osteoarthrosis as a condition, but she also agreed with the denial of the requested surgery. Dr. Jin opined that the requested procedures were not for the compensable conditions from the injury, which are right wrist sprain/strain and TFCC tear of the right wrist. Dr. Jin provided that the requested procedures were to instead address Mr. Blazer's degenerative arthrosis and its complication of deformity and dysfunction. She agreed with the denial of the surgery, and she advised that there was no causal relationship between the alleged injury and the requested medical procedures. Dr. Jin stated that any work disability as a result of undergoing the requested surgery would be due to a non-compensable condition. She noted that Mr. Blazer had returned to work in March 2019. For the compensable condition, Dr. Jin found no ratable permanent impairment and found zero impairment in the right wrist attributable to the alleged injury in the claim.

In order for a claim to be held compensable under the Workers' Compensation Act, three elements must coexist:  1) A personal injury, (2) received in the course of employment, and (3) resulting from that employment. *Jordan v. State Workmen's Comp. Comm'r*, 156 W.Va. 159, 163, 191 S.E.2d 497, 500 (1972). In determining whether an injury resulted from a claimant's employment, a causal connection between the injury and employment must be shown to have existed. *Emmel v. State Comp. Director*, 150 W.Va. 277, 145 S.E.2d 29 (1965). In syllabus point 3 of *Gill v. City of Charleston*, 236 W. Va. 737, 783 S.E.2d 857 (2016), this Court created a general rule that:

> [a] noncompensable preexisting injury may not be added as a compensable component of a claim for workers' compensation medical benefits merely because it may have been aggravated by a compensable injury. To the extent that the aggravation of a noncompensable preexisting injury results in a [discrete] new injury, that new injury may be found compensable.

Mr. Blazer argued on appeal that Dr. Hughes clearly determined that the injury aggravated a noncompensable preexisting condition and should be held compensable.

On February 10, 2020, the Office of Judges affirmed the three claims administrator Orders of February 21, 2019; February 25, 2019; and March 18, 2019. The Office of Judges addressed the

4

compensability of Mr. Blazer's requests for additional compensable conditions and specifically found that the aggravation of his wrist osteoarthritis is not compensable. A discreet new injury was not found in accordance with *Gill*. The Office of Judges relied upon Dr. Jin's opinion and concluded that it is more likely than not that the aggravation of Ms. Blazer's osteoarthritis is unrelated to the work injury of October 15, 2018.

The Office of Judges also determined that the record reveals that the request for surgical intervention is not for Mr. Blazer's compensable injury, but to treat his preexisting wrist arthrosis. Accordingly, the Office of Judges found that the claims administrator properly denied the request for surgical repair as it is necessitated by conditions unrelated to the compensable injury. The Office of Judges also relied upon Dr. Jin's opinion that Mr. Blazer had reached maximum medical improvement on October 14, 2019. It was concluded that he did not provide sufficient evidence of continuing temporary total disability for his right wrist strain or tear for the period after February 16, 2019. On September 18, 2020, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the February 10, 2020, decision.

In Syllabus Point 5 of *Moore v. ICG Tygart Valley, LLC*, 247 W. Va. 292, 899 S.E.2d 779 (2022), the Court stated:

> A claimant's disability will be presumed to have resulted from the compensable injury if: (1) before the injury, the claimant's preexisting disease or condition was asymptomatic, and (2) following the injury, the symptoms of the disabling disease or condition appeared and continuously manifested themselves afterwards. There still must be sufficient medical evidence to show a causal relationship between the compensable injury and the disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. This presumption is not conclusive; it may be rebutted by the employer.

Although Mr. Blazer argues that his TFCC tear is a discreet new injury that aggravated a non-compensable preexisting injury, the medical evidence does not show that he needed surgery for his TFCC tear. Dr. Hughes requested the diagnosis update for the TFCC tear in December 2018, and the condition was accepted into the claim on December 18, 2018. However, when Dr. Hughes submitted the second request for a diagnosis update on February 11, 2019, for an aggravation of the preexisting arthrosis of the right wrist, the request was denied. The two conditions and requests are distinct. Dr. Jin explained that there was no indication in Dr. Hughes's records that the requested surgery was to address the accepted compensable conditions in the claim. Instead, the requested surgery was to address degenerative arthrosis and its complication of deformity and dysfunction. Since the surgery was not necessary to treat a compensable injury, the temporary total disability benefits were not applicable for the period that Mr. Blazer would have missed for the surgical procedure. The Office of Judges did not err in affirming the claims administrator's decisions. For the foregoing reasons, we affirm the decision of the Board of Review.

Affirmed.

**ISSUED: April 5, 2023**

5

**CONCURRED IN BY:**

Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice C. Haley Bunn

**DISSENTING:**

Justice William R. Wooton

WOOTON, J., dissenting:

I respectfully dissent to the majority's affirmance of the denial of compensability, medical expenses, and benefits related to petitioner's right wrist injury without remand for analysis of this claim under our more recently established caselaw. It is undisputed that petitioner was injured while pulling a die out of a kiln and immediately diagnosed with work-related arthritis and a full thickness tear of the right wrist. Ultimately, his physician performed a fusion and requested the additional diagnosis of aggravation of pre-existing arthritis, which was denied, along with associated expenses and benefits. Summarily accepting the IME physician's opinion that the tear was "incidental" to petitioner's continued complaints and that the fusion was for unrelated, pre-existing arthritis, the claims administrator, Office of Judges, and Board of Review concluded petitioner did not demonstrate a "discrete" new injury as required by *Gill v. City of Charleston,* 236 W. Va. 737, 783 S.E.2d 857 (2016).

These rulings by the lower tribunals were rendered in 2020; however, in 2022, this Court clarified *Gill* in *Moore v. ICG Tygart Valley, LLC,* 247 W. Va. 292, 899 S.E.2d 779 (2022), creating a specific analysis that tribunals must undertake to determine the compensability of injuries clouded by the presence of pre-existing injuries. It is no longer sufficient to simply declare injuries "pre-existing" and therefore not "discrete" injuries justifying compensability. Rather, *Moore* holds that the tribunals must consider 1) if the pre-existing injury was asymptomatic; and 2) whether there was an immediate and continuous manifestation of the symptoms from which a reasonable inference of causation to the work injury can be made. *See id.*, syl. pt. 5. Although the majority cites this syllabus point, it fails entirely to discuss its impact on the decision rendered below despite evidence that petitioner functioned at a high level prior to the injury and that the accident rendered him unable to work without significant pain afterward. These are precisely the type of facts upon which, since the issuance of *Moore*, this Court has found a "natural inference of causation" and remanded for analysis under *Moore*. *Id. See*, *e.g.*, *McKinney v. Pinnacle Mining Co./Mission Coal*, No. 21-0222, 2022 WL 10219792 (W. Va. Oct. 18, 2022) (memorandum decision); *Owens v. Bundy Auger Mining, Inc*., No. 20-0664, 2022 WL 10218876 (W. Va. Oct. 18, 2022) (memorandum decision); *Ferrell v. Nw. Hardwoods*, No. 21-0208, 2023 WL 319237 (W. Va. Jan. 19, 2023) (memorandum decision); *McCune v. FedEx Freight, Inc*., No. 21-0478, 2022 WL 10218883 (W. Va. Oct. 18, 2022) (memorandum decision); *Edwards v. Kanawha Cnty. Bd. of Educ*., No. 21-0480, 2023 WL 356195 (W. Va. Jan. 23, 2023) (memorandum decision).

Because I would remand for consideration under *Moore*, I respectfully dissent.